IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JAMES YOUNGBEAR,<br><br>　　　　Defendant. | No. CR11-0151<br><br>REPORT AND RECOMMENDATION |

TABLE OF CONTENTS

I.   INTRODUCTION ................................. 2

II.  PROCEDURAL HISTORY ........................... 2

III. ISSUES PRESENTED ............................. 2

IV.  RELEVANT FACTS ............................... 3

V.   DISCUSSION ................................... 6
     A.   Did the Search Warrant Lack Probable Cause? ............. 6
          1.   Probable Cause ..................... 6
          2.   Good Faith Exception to Exclusionary Rule ............ 8
     B.   Were There Reckless Material Misrepresentations or
          Omissions Affecting Probable Cause? ................ 10
     C.   Must the Evidence be Suppressed Because the Application
          did not Allege a Violation of a Tribal Offense? ............. 13
          1.   Authority of the Tribal Court to Issue a Search Warrant ... 13
          2.   Admissibility of Evidence in Federal Court ............ 15
          3.   Good Faith Exception ................. 17

VI.  SUMMARY .................................... 17

VII. RECOMMENDATION .............................. 18

# I. INTRODUCTION

On the 28th day of November 2011, this matter came on for hearing on the Motion to Suppress (docket number 15) filed by the Defendant on November 16, 2011. The Government filed its Resistance (docket number 19) on November 22, 2011. The Government was represented by Assistant United States Attorney Patrick J. Reinert. The Defendant appeared in person and was represented by his attorney, Jane Kelly.

# II. PROCEDURAL HISTORY

On October 18, 2011, Defendant was charged by Indictment with being a felon in possession of ammunition. At the initial appearance and arraignment on October 19, 2011, Defendant entered a plea of not guilty and trial was scheduled for December 19, 2011.

On November 16, 2011, Defendant timely filed the instant motion to suppress. Due to the pending motion, the trial was continued to January 23, 2012.

# III. ISSUES PRESENTED

In his motion to suppress, Defendant asks that the Court suppress "any and all evidence seized" during the execution of a search warrant at his home on May 1, 2011. In support of his request, Defendant makes three claims: First, Defendant argues that the search warrant issued by the tribal judge was not supported by probable cause. Second, Defendant asserts that the applicant officer deliberately or recklessly omitted information from the search warrant application that was material to a determination of probable cause. At the hearing, Defendant expanded his allegation to include alleged material misstatements in the application. Third, Defendant argues that because the application for search warrant failed to allege a criminal offense as defined by tribal law, the search warrant was issued without probable cause.

## IV. RELEVANT FACTS

On May 1, 2011, Officer Lee Posusta of the Meskwaki Nation Police Department submitted an application for a search warrant to Associate Judge Theresa Mahoney of the Tribal Court of the Sac & Fox Tribe of the Mississippi in Iowa.[1] In the application, Posusta sought authority to search a residence, occupied by Defendant James Dean Youngbear and Delaine Jefferson, for firearms and/or ammunition. The application advised Judge Mahoney of the following:

1. Officer Posusta is employed as a peace officer for the Meskwaki Nation Police Department. He is certified as a peace officer for both the State of Iowa and the Sac & Fox Tribe of the Mississippi in Iowa.
2. Posusta was notified that Officer Mark Bear had arrested Defendant on April 29, 2011 for several charges involving domestic assault and threats.
3. Posusta knew Defendant from "prior incidents."
4. Defendant is a felon.
5. Defendant "threatened to use firearms on other persons in the past, including law enforcement officers."
6. Posusta reviewed Officer Bear's report and the witness statements of Delaine Jefferson, Ginger Jefferson, and Sahara Martinez.
7. On April 29, 2011, the three witnesses were present at the residence shared by Defendant and Delaine Jefferson, intending to drop Delaine off.
8. The witnesses observed Defendant "kick the door open, grab Delaine and tell her to get inside the residence, and raise his hand as if to strike Ginger Jefferson."
9. All three witness statements mentioned that Defendant "threatened to retrieve a gun from the residence."

---

[1] A copy of the application and the resulting search warrant were submitted at the hearing as Government's Exhibit 1.

10. In her statement, Delaine Jefferson stated: "He said he was going to get his gun!"
11. In her statement, Ginger Jefferson stated: "He turned around and said 'I'll get my gun.'"
12. In her statement, Sahara Martinez stated: "I seen James walk back to the house . . . and turned around and said 'I'll get my gun' and proceeded back into the house."
13. Defendant's criminal history reflects that he was convicted of being a felon in possession of a firearm on January 25, 2007.
14. Posusta spoke with Delaine Jefferson on May 1, 2011 and "asked her about the possibility of a firearm in Mr. Youngbear's residence."
15. Delaine Jefferson told Posusta that she had resided in a room there for approximately the last four months, and had not seen any firearms.
16. Posusta also asked Delaine Jefferson "about dropping the No-Contact Order between her and Mr. Youngbear."
17. Posusta then opined as follows:

> I believe Mr. Youngbear's threats to Delaine Jefferson, Ginger Jefferson, and Sahara Martinez, combined with his history of possessing firearms in violation of law and threatening to use firearms, gives probable cause to believe a firearm may be found in his residence, and I pray a search warrant for the residence be issued.

In reliance on the application, Judge Mahoney issued a search warrant for the residence occupied by Defendant and Delaine Jefferson on the Sac & Fox Road in Tama, Iowa. During the search, officers found an "A.R. Magazine containing one blank round," four rounds of .22 caliber ammunition, and a 20 gauge "slug." No guns were found in the residence.

At the hearing, Officer Posusta testified that he had previously arrested Defendant at his place of employment on an arrest warrant for a theft charge. According to Posusta, a review of other reports indicated that there had been "multiple contacts" between Defendant and the Meskwaki Nation Police Department. Posusta described these contacts as occurring "every couple of months." According to Posusta, when officers would run Defendant's name for warrants, "it would flag that he's a felon and he's got known history of possession of firearms as a felon." Posusta also testified that Defendant had told other officers in the past that "he was military" and had "sniper experience." According to Posusta, "the defendant made comments in the past regarding, you know, I've got my guns at home."

Officer Posusta testified that Officer Bear's report, and the statements from the three witnesses on April 29, indicated that Defendant appeared to be intoxicated and smelled of alcohol.[2] When asked why he did not include that information in his search warrant application, Posusta testified that based on Defendant's statement on April 29, he believed Defendant was "a felon with a gun," and "whether he was intoxicated or not, I didn't feel was relevant to the search warrant."

On cross-examination, Officer Posusta initially testified that he "ran into Mr. Youngbear on other occasions, but only one criminal proceeding." On further examination, however, Posusta conceded that he did not have any "contact" with Defendant on those other occasions, but was simply attempting to locate Defendant to execute warrants. Posusta also conceded that he only knew of one prior incident where Defendant had threatened to use firearms on other persons in the past. Posusta could not confirm that the "person" involved in the prior incident was a law enforcement officer. According to Posusta, however, Defendant's NCIC report "is flagged that he has threatened law enforcement officers with firearms." Posusta has no personal knowledge

---

[2] Officer Bear's arrest report and the three witness statements were not introduced as exhibits.

of the prior incident, however, and could provide no further detail. Posusta testified that Defendant's prior statement that "I've got guns at home" occurred "just once." Posusta could not testify regarding whether Defendant's reference to "sniper experience" involved a threat.

## V. DISCUSSION

In support of his motion to suppress, Defendant makes three arguments: First, Defendant asserts that the facts set forth in the search warrant application do not establish probable cause to believe that a gun could be found in his residence. Second, Defendant claims that Officer Posusta recklessly made misrepresentations and omitted information from the application, which were material to a determination of probable cause. Third, Defendant argues that because the search warrant application did not seek evidence of a tribal offense, the warrant lacked probable cause.

### A. Did the Search Warrant Lack Probable Cause?

#### 1. Probable Cause

The Court turns first to Defendant's argument that the allegations contained in the search warrant application do not support a finding of probable cause to believe that a gun would be found in his residence. The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. A warrant is required to search a person's house, with certain exceptions not applicable here. *Kentucky v. King*, ___ U.S. ___, 131 S. Ct. 1849, 1856 (2011). "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

6

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

In this case, no oral testimony was presented to Judge Mahoney when the search warrant was issued. When an issuing judge relies solely on the written application to issue a search warrant, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *Solomon*, 432 F.3d at 827.

Here, Judge Mahoney was told that two days earlier, there was an incident outside Defendant's residence, resulting in several charges against Defendant for domestic assault and threats. Specifically, Defendant was observed kicking a car door open, grabbing Delaine Jefferson, and raising his hand to Ginger Jefferson, "as if to strike" her. Three witnesses to the incident told the investigating officer that Defendant said he was going to "get my gun."

Judge Mahoney was told that Defendant is a convicted felon, and in January 2007 was convicted of being a felon in possession of a firearm. Judge Mahoney was also told that Defendant had threatened to use firearms on other persons in the past, including law

enforcement officers. The affidavit disclosed, however, that Delaine Jefferson had been living in the residence for approximately four months, and had not seen any firearms.

Considering the totality of the circumstances, the Court concludes that there was probable cause to believe that a gun could be found in Defendant's residence. Following an altercation in front of his house, in which Defendant threatened to "get my gun," he proceeded back into the house. Defendant has a history of possessing a firearm, notwithstanding his status as a convicted felon. Using a "common sense" approach, the Court believes that there was "a fair probability" that a gun could be found in Defendant's residence. *Gates*, 462 U.S. at 238; *Grant*, 490 F.3d at 632. While Delaine Jefferson had not seen a gun during the four months that she resided in the residence, the totality of the circumstances nonetheless supports a finding of probable cause.

2. *Good Faith Exception to Exclusionary Rule*

The Court notes parenthetically that even if probable cause is lacking, the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), would defeat Defendant's request that the evidence be suppressed. The good faith exception to the exclusionary rule provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances is present.

> The Supreme Court has identified four circumstance in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is

> "so facially deficient" that the executing officer could not
> reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-33 (citing *Leon*, 468 U.S. at 923.).

Defendant did not file a written reply to the Government's argument that the good faith exception in *Leon* applies to the execution of the May 1, 2011 search warrant at Defendant's house. Accordingly, the Court must speculate on why he believes *Leon* would be inapplicable. The first "circumstance" described in *Grant* – that the application contained material false statements – is relevant to Defendant's *Franks* argument (discussed below), but is not applicable to Defendant's first argument that the application, without any additions or deletions, failed to show probable cause. Defendant apparently does not argue that Judge Mahoney "wholly abandoned her judicial role," nor does he point to any "facial deficiencies" in the warrant. Accordingly, the only possible "circumstance" which would preclude the good faith exception found in *Leon*, is a claim that the search warrant application was "so lacking in indicia of probable cause" as to render Officer Posusta's belief in the existence of probable cause "entirely unreasonable."

In *United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007), the Court noted that "'entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our delusion of the Court's particularly strong choice of words." *Id.* at 1122-23. As set forth above, I believe that the application establishes probable cause for the issuance of the search warrant. Even if the district court finds that probable cause is lacking, however, it was not "so lacking" as to render Officer Posusta's belief in the validity of the warrant "entirely unreasonable." Therefore, the good faith exception found in *Leon* would forfend application of the exclusionary rule. Accordingly, Defendant's motion fails on this ground.

## B. Were There Reckless Material Misrepresentations or Omissions Affecting Probable Cause?

Defendant next argues in his motion to suppress that Officer Posusta deliberately or recklessly omitted information from the search warrant application. Specifically, Defendant complains that Posusta "failed to inform the tribal judge that all three individuals present on April 29, 2011, told the reporting officer that James Youngbear appeared to be under the influence of alcohol" and that he smelled of alcohol. At the time of hearing, Defendant added an allegation that Posusta recklessly made misrepresentations in the search warrant application.[3] Defendant argues that if the misstatements are ignored and the omitted information is included, the application would not establish probable cause for the issuance of a warrant.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Court held that if a defendant establishes by a preponderance of the evidence that a sworn statement used by police to procure a search warrant contained perjury or reckless disregard for the truth, then the Court must determine whether the affidavit's remaining content is sufficient to establish probable cause. If not, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156. *Franks* also applies to material that has been "deliberately or recklessly omitted from a search-warrant affidavit." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010). "It should be noted that a *Franks* violation cannot be excused under the *Leon* good faith exception to the exclusionary rule." *United States v. Cowling*, 648 F.3d 690, 695 n.4 (8th Cir. 2011).

The test to be applied in considering a *Franks* claim was summarized recently by the Eighth Circuit Court of Appeals:

---

[3] At the time of hearing, Defendant's counsel stated that Defendant does not claim that the misstatements or omissions were intentional, but rather argues that they were reckless.

> To prevail on a *Franks* challenge, a defendant must show the following: (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented."

*United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011) (quoting *United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010)).

Here, Defendant asserts one material omission. Defendant argues that if Judge Mahoney had been told that Defendant appeared intoxicated at the time of the incident on April 29, it would have defeated probable cause. According to Defendant, information regarding his apparent intoxication was "critical to the determination of probable cause." Defendant argues that if she had been told that Defendant was apparently intoxicated when he threatened to "get my gun," "the tribal judge would almost certainly have given substantially less weight to the veracity of a drunken outburst."

I respectfully disagree. Defendant cites no authority to support a conclusion that an intoxicated person under these circumstances is more likely to be lying about his possession of a firearm. It can be argued with equal force that alcohol sometimes becomes a "truth serum," encouraging persons to make statements which, if sober, would go unsaid. For example, a sober convicted felon may be less likely to admit illegal possession of a firearm, than an intoxicated convicted felon. There is simply no reason to believe that a drunken belligerent is more or less truthful than a sober belligerent.

Regarding his claim of a material omission, I believe Defendant's argument fails to satisfy either of the requirements found in *Cowling*. First, Defendant failed to prove that Officer Posusta was "reckless" in failing to include information regarding Defendant's intoxication. At the hearing, Posusta explained that Defendant was suspected of being a felon in possession of a firearm, and Defendant's intoxication was not relevant to that charge. In his brief, Defendant argues that evidence regarding his intoxication "was

11

critical to the determination of probable cause," and therefore recklessness may be inferred, citing *Mashek*, 606 F.3d at 928. As discussed above, however, I believe that Defendant's intoxication did not make his threat any more or less credible and, therefore, was not "clearly critical" to a finding of probable cause. Therefore, there is no evidence that Posusta recklessly omitted the information from the search warrant application. Second, even *if* information regarding Defendant's intoxication was recklessly omitted from the application, its inclusion would not defeat a finding of probable cause. That is, the fact that Defendant was intoxicated on April 29 does not make his threat to "get my gun" any more or less credible.

The Court reaches the same conclusion regarding the alleged material misrepresentations. Judge Mahoney was advised that Defendant "threatened to use firearms on other persons in the past, including law enforcement officers." The application refers to firearm<u>s</u> – plural – but does not refer to more than one incident. At the hearing, Officer Posusta testified that he only knew of one prior incident where Defendant had threatened to use firearms on other persons in the past, and could not confirm that the person involved was a law enforcement officer. Posusta also testified, however, that Defendant's NCIC report "is flagged that he has threatened law enforcement officers with firearms." The Court believes the application was not "false or misleading," as required by *Cowling*, and was not "reckless." To the extent there may be any slight discrepancy between the application and Posusta's testimony, however, it would not affect a finding of probable cause.[4]

---

[4] Officer Posusta testified at the hearing regarding prior contacts with Defendant, prior statements by Defendant that he has "guns at home," and Defendant's reference to "sniper experience." On cross-examination, Posusta acknowledged that he had contact with Defendant on only one prior occasion, Defendant's statement that he had "guns at home" occurred just once, and he did not know if Defendant's reference to "sniper experience" involved a threat. None of that information was included in the search warrant application, however, and therefore has no affect on the finding of probable cause.

## C. Must the Evidence be Suppressed Because the Application did not Allege a Violation of a Tribal Offense?

### 1. Authority of the Tribal Court to Issue a Search Warrant

Defendant's third argument asserts that "the warrant lacked probable cause" because the application did not allege a violation of the Sac & Fox Tribal Code.[5] Section 13-6601(a) provides that upon the request of any law enforcement officer, "the Tribal Court may issue a written search warrant to search for and seize evidence of a criminal offense." (*See* Government's Exhibit 3.) "Criminal Offense" is not defined in the Tribal Code. The terms "crime" and "offense" are defined as follows:

> "Crime" means a reference to an offense under this Code and any other ordinance of the Tribe and other applicable laws for which upon conviction a person may be subject to a criminal fine, imprisonment or criminal forfeiture, or any combination thereof.

Tribal Code, § 13-1101(a). (*See* Government's Exhibit 4.)

> "Offense" means conduct for which a sentence to a term of imprisonment or of a penal fine is provided by any law of the Tribe, but does not include civil violations.

Tribal Code, § 13-5102(x). (*See* Government's Exhibit 5.)

Defendant focuses on the term "offense," and argues that the Tribal Court may issue a search warrant only when the conduct constitutes a violation of "any law of the Tribe." Defendant argues that the search warrant application did not allege a violation of tribal law and, therefore, "the search warrant was issued without probable cause." In response, the Government focuses on the term "crime," which includes not only offenses described in the Tribal Code, but also "other applicable laws for which upon conviction a person may be subject" to criminal penalties. It is undisputed that the State of Iowa and

---

[5] At the hearing, the Court was provided with a copy of Title 13 of the Tribal Code, entitled "Law and Order." By agreement of the parties, the Court has taken judicial notice of that part of the Tribal Code.

the United States have jurisdiction over offenses committed on "Indian reservations," to the same extent as if the crimes had been committed "outside of any Indian reservation." *See* Act of June 30, 1948, Pub. L. No. 846, 62 Stat. 1161 (1948). (Government's Exhibit 2.)

Initially, the Government disputes Defendant's argument that the evidence being sought was unrelated to a violation of tribal law. As a result of the April 29 incident, Defendant was charged in Tribal Court with two counts of assault, intimidation, and disorderly conduct. Three witnesses will apparently testify that Defendant threatened to "get my gun." Whether or not Defendant actually possessed a gun may be relevant to whether the threat was genuine, or simply "a drunken outburst," as argued by Defendant. As grounds for issuing the search warrant, Officer Posusta listed, among other things, that the firearms and/or ammunition being sought "[i]s property relevant and material as evidence in a criminal prosecution."

The Tribal Code authorizes the Tribal Court to issue a search warrant for evidence of a "criminal offense." As previously noted, "criminal offense" is not defined in the Tribal Code. Defendant asks that the Court focus on the definition of "offense," while the Government asks that the Court focus on the definition of "crime." A clue to the proper interpretation of the Tribal Code may be found in the paragraph immediately following the paragraph authorizing the issuance of search warrants.

> A search warrant shall be supported by affidavit or sworn testimony and must particularly describe the person to be searched and the item(s) to be seized. If probable cause exists to believe that a *crime* has been committed and that evidence of the *crime* is present at the place or on the person to be searched the warrant shall issue. The search warrant shall direct police officers to search the location or person described for the items specified.

Tribal Code, § 13-6601(b). (*See* Government's Exhibit 3.) (emphasis added)

When subparagraphs (a) and (b) of section 13-6601 are read together, the Court concludes that Judge Mahoney had authority pursuant to the Tribal Code to issue a search warrant upon a finding that probable cause existed to believe that evidence of a *crime* could be found at the place to be searched. As set forth above, a "crime" includes violations of state and federal law.

### 2. *Admissibility of Evidence in Federal Court*

Even *if* the search warrant lacked probable cause because the application did not allege a violation of tribal law, and therefore the seized evidence could not be used in Tribal Court, it does not necessarily follow that the evidence could not be used in a federal prosecution. In fact, the cases cited by Defendant suggest that the evidence will not be suppressed in federal court unless there is a Fourth Amendment violation or a violation of federal law.

In *United States v. Timley*, 443 F.3d 615 (8th Cir. 2006), cited by Defendant, officers obtained a state search warrant to search the defendant's residence. The application was not "filed and verified," however, as required by state law. The defendant asserted that the evidence must be suppressed because the officers failed to follow the procedural mandates of Missouri law in obtaining the warrant. *Id.* at 624. The Court rejected the defendant's argument:

> Our circuit has suggested that, in some circumstances, principles of comity may favor federal courts excluding evidence seized by state officers in violation of state law. We have also held, however, that a procedural violation of state or federal law in securing a warrant ought not result in suppression of the evidence unless the law was deliberately violated, or the defendant was prejudiced by the violation in the sense that absent the violation the search may not have occurred.

*Timley*, 443 F.3d at 624 (citations omitted). The Court concluded that a violation of Missouri state law did not prejudice the defendant and, therefore, it did not warrant suppression.

15

> This is not a case in which officers flagrantly disregarded state law on the view they could simply seek a federal prosecution and ignore state law. Thus, while in an appropriate circumstance suppression may be warranted in a federal prosecution if the evidence shows state officers purposely subverted state law, this is not such a case.

*Id.* at 624-25.

In *United States v. Hornbeck*, 118 F.3d 615 (8th Cir. 1997), also cited by Defendant, a tribal search warrant was issued for the defendant's residence. A timely return of the search warrant was not filed, however, and therefore the warrant was void under tribal law. *Id.* at 616. In a subsequent federal prosecution, the defendant filed a motion to suppress based on the "void" tribal search warrant. Again, the Eighth Circuit rejected the argument.

> Hornbeck argues that the district court should have suppressed the search evidence because the warrant was void under tribal law due to the failure to timely file the return and provide him with an inventory of property seized. Hornbeck's reliance on tribal law, however, is erroneous. Federal, not tribal or state, law governs the admission of this evidence.

*Hornbeck*, 118 F.3d at 617. In rejecting the defendant's argument, the Court noted that "[t]he exclusionary rule is a 'blunt instrument' and 'for that reason courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude.'" *Id.* at 618 (quoting *United States v. Burke*, 517 F.2d 377, 386 (2d Cir. 1975)).

Thus, the Court in *Timley* and *Hornbeck* concluded that even if a search warrant may be defective in the jurisdiction in which the warrant was issued (state court and tribal court, respectively), the evidence is nonetheless admissible in a federal prosecution if it is compliance with the Fourth Amendment and there is no violation of federal law. As set forth above, I believe that the application established probable cause for issuance of the search warrant. There is no allegation here that Officer Posusta "flagrantly disregarded"

tribal law believing that he could simply seek a prosecution in federal court. *Timley*, 443 F.3d at 624-25.

### 3. Good Faith Exception

Finally, even *if* the district court finds that the search warrant is not valid because of a violation of the Tribal Code, I believe that the good faith exception found in *Leon* would be applicable. The Constitution does not expressly prohibit the introduction of evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 906 (1984). Rather, the exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)). The Court noted in *Leon* that it "frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 918. After reviewing the purposes of the exclusionary rule, the Court concluded that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" would not be suppressed. *Id.* at 922.

Even if the search warrant in this case is "invalidated" due to a violation of tribal law, the evidence established that Officer Posusta acted in an objectively reasonable belief that the warrant was valid, and the search did not violate the Fourth Amendment. As set forth above, none of the four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable are present here. Since there is no evidence of wrongdoing by the officers in this case, application of the exclusionary rule would not perform its intended deterrent effect. Accordingly, pursuant to *Leon*, the evidence should not be suppressed.

### VI. SUMMARY

In summary, I believe the search warrant issued by the Tribal Court was supported by probable cause. No misrepresentations were recklessly included in the application, nor

was any information recklessly omitted. Even if the alleged misrepresentation is ignored and the omitted information is included, however, it would have no effect on the finding of probable cause. I believe the Tribal Court had authority to issue a search warrant based on probable cause to believe that evidence of a crime could be found at the place to be searched. Even if the Tribal Court's authority is limited to violations of tribal law, however, I believe the admissibility of the evidence in a federal prosecution is unaffected. Finally, the officers had an objectively reasonable belief in the validity of the search warrant and, therefore, any defects in the search warrant do not require suppression of the evidence.

## VII. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that the Motion to Suppress (docket number 15) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on November 28, 2011.*

DATED this 1st day of December, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA