**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 11-CR-151-LRR |
| vs. | **ORDER** |
| JAMES YOUNGBEAR, | |
| Defendant. | |

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  RELEVANT FACTUAL AND PROCEDURAL HISTORY* . . . . . . . . . . . . . *2*

*III. STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*IV.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *A.   Probable Cause* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *B.   Intentional or Reckless Omissions and/or Falsehoods* . . . . . . . . . . . *4*
    *C.   Authority of Tribal Judge to Issue Search Warrant* . . . . . . . . . . . . . *6*
        *1.   Admissibility in federal court* . . . . . . . . . . . . . . . . . . . . . . . *6*
        *2.   **Leon** good-faith exception* . . . . . . . . . . . . . . . . . . . . . . . . *9*
            *a.   Applicability in general* . . . . . . . . . . . . . . . . . . . . . . *9*
            *b.   Applicability to this case* . . . . . . . . . . . . . . . . . . . *10*
        *3.   Evidence of tribal offenses* . . . . . . . . . . . . . . . . . . . . . . . *12*

*V.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

## *I. INTRODUCTION*

The matter before the court is Defendant James Youngbear's Objections (docket no. 28) to United States Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 22), which recommends that the court deny Defendant's "Motion to Suppress" ("Motion") (docket no. 15).

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

On April 28, 2011, Defendant was living on the Sac & Fox Tribe of the Mississippi Settlement located in Tama County, Iowa. That night, he was involved in a confrontation with his girlfriend outside their shared residence. Three witnesses told police that, during this confrontation, Defendant threatened to "get his gun." Gov't Ex. 1, Search Warrant Affidavit (docket no. 19-1) at 2. Defendant was intoxicated at the time he made the threat. On April 29, 2011, a tribal law enforcement officer arrested Defendant for assault, intimidation and disorderly conduct. On May 1, 2011, Officer Lee Posusta, another tribal law enforcement officer, learned about the incident and sought a warrant to search Defendant's residence for a "firearm and/or ammunition." *Id.* at 1. Associate Judge Theresa L. Mahoney of the Tribal Court of the Sac & Fox Tribe of the Mississippi in Iowa issued the warrant. Officer Posusta then executed the warrant, and, during the search, he found ammunition and a shotgun shell.

On October 18, 2011, a grand jury returned a one-count Indictment (docket no. 2) against Defendant. The Indictment charges that, on or about April 29, 2011, Defendant possessed ammunition and a shotgun shell after having previously been convicted of one or more crimes punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On November 16, 2011, Defendant filed the Motion, which requests that the court suppress "any and all evidence seized" during the search of Defendant's residence. Motion at 1. On November 22, 2011, the government filed a Resistance (docket no. 19). On November 28, 2011, Judge Scoles held a hearing on the Motion. Defendant appeared in court with his attorney, Jane Kelly. Assistant United States Attorney Patrick J. Reinert represented the government. On December 1, 2011, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On December 19,

2011, Defendant filed his Objections. The matter is fully submitted and ready for decision.[1]

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. ANALYSIS

Defendant lodges three objections to Judge Scoles's Report and Recommendation. First, Defendant objects to a factual finding and contends that the search warrant affidavit failed to establish probable cause to believe that a firearm and/or ammunition was in Defendant's residence. Second, Defendant argues that the affidavit included intentional or reckless omissions and/or falsehoods, and, therefore, probable cause was lacking. Finally, Defendant argues that Judge Mahoney lacked the authority to issue a warrant to search for evidence of a federal crime, and, in this case, the warrant sought evidence relating solely

---

[1] Pursuant to Local Criminal Rule 59, Defendant requested a transcript of the hearing. The court, however, finds it unnecessary to wait for the official transcript before rendering its decision because Defendant's arguments are legal, as opposed to factual, in nature.

3

to a federal crime. Having conducted the required de novo review of the objected-to portions of the Report and Recommendation, the court shall overrule Defendant's objections.

## A. *Probable Cause*

First, Defendant "objects to the factual conclusion that he 'was observed kicking a car door open,' as it may have been the door to the residence." Objections at 2 (quoting Report and Recommendation at 7). Next, Defendant objects to Judge Scoles's finding that the search warrant affidavit established probable cause. Defendant, however, acknowledges that the *Leon* good-faith exception applies. *See id.* Consequently, even if the court sustained those objections, neither finding impacts whether it is appropriate to grant the Motion. Accordingly, the court finds that it is unnecessary to address them further.

## B. *Intentional or Reckless Omissions and/or Falsehoods*

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court outlined the procedure whereby a defendant may challenge the veracity of statements in a search warrant affidavit. "There is . . . a presumption of validity with respect to the affidavit supporting [a] search warrant." *Id.* at 171. However, a defendant is entitled to an evidentiary hearing to challenge the truthfulness of the factual statements in the affidavit if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56; *see also United States v. McIntyre*, 646 F.3d 1107, 1113-14 (8th Cir. 2011) (explaining the requirements a defendant must meet before being entitled to an evidentiary hearing). The Eighth Circuit Court of Appeals has held that "omission of material information from an affidavit can form the basis of a *Franks* violation where the additional information would have negated probable cause." *United States v. Finley*, 612 F.3d 998, 1003 n.8 (8th Cir. 2010) (emphasis omitted); *see, e.g., United States v.*

4

*Williams*, 477 F.3d 554, 557 (8th Cir. 2007); *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).

Defendant contends that Officer Posusta intentionally or recklessly omitted from the affidavit the fact that Defendant was intoxicated when he stated he was "going to get his gun." Gov't Ex. 1, Search Warrant Affidavit at 2. Defendant further argues that Officer Posusta intentionally or recklessly included false or misleading information in the affidavit. First, Defendant argues that Officer Posusta's assertion that he knew Defendant from "prior incidents" is false because there was only one prior incident. Objections at 5. Second, Defendant argues that the affidavit falsely states that Defendant had "threatened to use firearms on other persons in the past, including law enforcement officers." *Id*. Defendant claims that this information is false because Officer Posusta did not have personal knowledge but, rather, got the information from a law enforcement database. *Id*. at 6. Furthermore, the statement falsely suggests that there were multiple incidents involving multiple firearms and multiple people. *Id*. at 5-6. In the Report and Recommendation, Judge Scoles found that Defendant was not entitled to a *Franks* hearing because, even if Officer Posusta had included the omitted information and removed the allegedly false information in the search warrant affidavit, the affidavit would still have established probable cause. The court agrees.

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (internal quotation mark omitted). In this case, even if the omitted information regarding Defendant's intoxication was included and the allegedly false statements were omitted, the affidavit still established probable cause to believe that Defendant had a firearm and/or ammunition in his residence. Defendant, albeit drunkenly, threatened to retrieve a gun from his residence, and he has a prior conviction for being a felon in possession of a firearm. *Cf. United States v. Grooms*, 602 F.3d 939, 942 (8th Cir. 2010) (holding that

5

police had probable cause to search the defendant's vehicle for a firearm after the defendant stated during a verbal altercation that he was going to get a gun). Based on this information, the court finds that there was probable cause to believe that law enforcement would find a firearm in Defendant's residence. Thus, the court overrules Defendant's objection on this ground.

## C. Authority of Tribal Judge to Issue Search Warrant

Finally, Defendant objects to Judge Scoles's finding that Judge Mahoney had the authority under the Tribal Code to issue a search warrant for evidence of a federal offense. Defendant contends that Tribal Code Section 13-6601[2] empowers tribal judges to issue search warrants only for evidence of tribal offenses. Additionally, Defendant objects to "any suggestion that the search warrant in this case sought evidence of a tribal offense of assault, intimidation, or disorderly conduct." Objections at 11.

The court finds it unnecessary to determine the scope of Judge Mahoney's authority to issue search warrants under the Tribal Code. Even if Judge Mahoney lacked the authority to issue a search warrant for evidence of a federal offense, the court finds that the evidence would nonetheless be admissible. First, the court will consider whether a violation of Section 13-6601 impacts the admissibility of the evidence in federal court. Second, the court will address whether the *Leon* good-faith exception applies. Finally, the court will address whether the search warrant sought evidence of tribal offenses.

### 1. *Admissibility in federal court*

The court first considers the threshold issue of whether a violation of Tribal Code Section 13-6601 impacts the admissibility of the challenged evidence in federal court. The Eighth Circuit Court of Appeals has routinely held that "'evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution because *state* law was violated.'" *United States v. Hornbeck*, 118 F.3d 615, 617 (8th Cir.

---

[2] Section 13-6601(a) provides that "the Tribal Court may issue a written search warrant to search for and seize evidence of a criminal offense."

1997) (quoting *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994)); *see also United States v. Appelquist*, 145 F.3d 976, 979 (8th Cir. 1998) ("Only the Fourth Amendment governs the suppression of evidence seized by state and local officials."). The Eighth Circuit has extended this principle to the context of tribal law. *See Hornbeck*, 118 F.3d at 617 n.5 (noting that, in the context of a challenged search by tribal officers, "cases involving searches by state authorities are relevant").[3]

In *Hornbeck*, a tribal law enforcement officer failed to comply with a tribal law providing that a search warrant was void unless law enforcement timely returned the executed search warrant to the tribal court. 118 F.3d at 616. The Eighth Circuit held that the evidence was admissible in federal court: "[The defendant's] argument is based solely upon alleged violations of tribal law. He does not argue that the search and seizure violated the Constitution or other federal law." *Id.* at 618. Similarly, in *Becerra-Garcia*, the Ninth Circuit Court of Appeals held that, even if tribal officers lacked the authority to stop a vehicle under tribal law, evidence obtained pursuant to the stop was admissible in federal court because the officers complied with the Fourth Amendment. 397 F.3d at 1174-75; *see also United States v. High Wolf*, No. CR. 07-30102-01-KES, 2008 WL 3833587, at *6 (D.S.D. Aug. 11, 2008) (same).

In this case, the issue is whether Defendant's Fourth Amendment rights were violated if Judge Mahoney exceeded her warrant-issuing authority. Defendant argues that there was a Fourth Amendment violation: "In this case, the tribal court lacked the authority to issue the warrant, as . . . it did not seek evidence of a tribal offense and, thus, was lacking in probable cause." Objections at 12. The court agrees that, if Judge Mahoney

---

[3] The court recognizes that "the Fourth Amendment does not directly govern the conduct of tribal governments." *United States v. Becerra-Garcia*, 397 F.3d 1167, 1171 (9th Cir. 2005). "Nonetheless, the Indian Civil Rights Act ('ICRA') imposes an 'identical limitation' on tribal government conduct as the Fourth Amendment." *Id.* (quoting *United States v. Manuel*, 706 F.2d 908, 911 n.3 (9th Cir. 1983)). Accordingly, the court will proceed in its analysis as if the Fourth Amendment applies. *See id.* (applying the Fourth Amendment because the result would be the same under the ICRA)

lacked the authority to issue a search warrant for evidence of a federal offense and the warrant sought evidence relating solely to a federal offense, the search violated Defendant's Fourth Amendment rights. The Fourth Amendment violation at issue, however, is not a lack of probable cause but, rather, a lack of "a 'neutral and detached magistrate' who is 'lawfully vested' with warrant-issuing authority." 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.5 (4th ed.) (quoting *Shadwick v. City of Tampa*, 407 U.S. 345, 350, 352, 354 (1972)). Here, Judge Mahoney's authority to issue warrants is defined by tribal law, and, if pursuant to tribal law, she lacked the authority to issue the warrant, then Defendant suffered a Fourth Amendment violation. While the court acknowledges the general principle that "[f]ederal, not tribal or state, law governs the admissibility of . . . evidence" in a federal proceeding, *Hornbeck*, 118 F.3d at 617, there are "a few situations" in which "Fourth Amendment analysis requires reference to state law," *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995) (citing LaFave, *supra*, § 1.5). "[I]t is beyond question that [courts] determine who is a qualified magistrate by consulting state law." *United States v. Master*, 614 F.3d 236, 241 (6th Cir. 2010).

In *Master*, a Tennessee magistrate judge issued a search warrant for property located outside his county, thereby exceeding the scope of his warrant-issuing authority under Tennessee law. *Id.* at 238. The Sixth Circuit noted that the magistrate judge's "authority to issue warrants stems exclusively from Tennessee law, but that same source of law provides that [the magistrate judge] had no authority to issue a warrant for a search of Defendant's home." *Id.* at 241. The Sixth Circuit concluded, accordingly, that the search violated the defendant's Fourth Amendment rights. *Id.*

Thus, in view of the foregoing, if Judge Mahoney lacked the authority to issue a search warrant for evidence of a federal offense and the search warrant sought evidence relating solely to a federal offense, then Defendant suffered a Fourth Amendment violation. However, as the court explains below, the evidence is nonetheless admissible pursuant to the *Leon* good-faith exception.

8

## 2. Leon *good-faith exception*

The court will first determine whether the *Leon* good-faith exception applies where the magistrate judge lacked the authority to issue the search warrant. Because the court concludes that the good-faith exception may apply in such a situation, the court will next decide whether the good-faith exception applies in this case.

### a. *Applicability in general*

In *United States v. Leon*, the Supreme Court created a "good-faith exception" to the exclusionary rule when a law enforcement officer obtains evidence in "reasonable reliance on a subsequently invalidated search warrant." 468 U.S. 897, 913, 922 (1984). Thus, pursuant to *Leon*, evidence obtained in violation of the Fourth Amendment may nonetheless be admissible in federal court if law enforcement acted in good faith in executing the search warrant. Defendant argues that the *Leon* good-faith exception does not apply "under these highly unusual circumstances" in which a tribal judge lacked the authority to issue the warrant. Objections at 14. The court disagrees.

In shaping the exclusionary rule, the Supreme Court has "focused on the efficacy of the rule in deterring Fourth Amendment violations in the future" and held that "the benefits of deterrence must outweigh the costs." *Herring v. United States*, 555 U.S. 135, 141 (2009). With these goals in mind, the Supreme Court held in *Leon* that the rule does not apply when the judge issuing a warrant erred:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.
>
> Third, and most important, [there is] no basis . . . for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

468 U.S. at 916 (footnote omitted). Accordingly, "evidence should be suppressed only if it can be said that the *law enforcement officer* had knowledge, or may properly be charged

with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring*, 555 U.S. at 143 (emphasis added) (quoting *Illinois v. Krull*, 480 U.S. 340, 348-49 (1987)) (internal quotation marks omitted); *see also Arizona v. Evans*, 514 U.S. 1, 14-16 (1995) (holding that the good-faith exception applied when a court employee made a clerical error in a court database and police reasonably relied on the information in the database).

The court concludes that the *Leon* good-faith exception may apply when a judge exceeds her warrant-issuing authority. As *Leon* and its progeny have explained, the primary focus of the good-faith exception is on police conduct and suppression is only warranted when exclusion of the evidence will "deter[] Fourth Amendment violations in the future." *Herring*, 555 U.S. at 141; *see also Leon*, 468 U.S. at 916 (finding that the exclusionary rule does not impact the behavior of judges); *Master*, 614 F.3d at 243 (holding that the good-faith exception may apply when a judge exceeds his or her warrant-issuing authority). Therefore, the court concludes that, if Judge Mahoney lacked the authority to issue the warrant, the good-faith exception could apply.

### b. *Applicability to this case*

Since the court concludes that the *Leon* good-faith exception could apply when a judge exceeds his or her warrant-issuing authority, the next inquiry is whether it applies in this case. *See Leon*, 468 U.S. at 923 (describing the four situations in which the good-faith exception does not apply). Defendant suggests that the good-faith exception does not apply because: (1) "the issuing magistrate wholly abandoned [her] judicial role," *id.*; (2) the affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)); and (3) the warrant was "so facially deficient . . . that the executing officers [could not] reasonably presume it to be valid," *id.* The court will address each argument in turn.

First, Defendant argues that, by issuing the warrant without authority to do so, Judge Mahoney "wholly abandoned her judicial role." Objections at 14. The court disagrees.

In *Leon*, the Supreme Court clarified that a magistrate abandons her judicial role if she becomes "'an adjunct law enforcement officer.'" *Leon*, 468 U.S. at 914 (quoting *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327 (1979)). In *Lo-Ji Sales*, for example, the Supreme Court held that the magistrate had abandoned his judicial role when "[h]e allowed himself to become a member, if not the leader, of the search party." 442 U.S. at 327. This is not the case presented here. Defendant has not alleged that Judge Mahoney was acting in concert with Officer Posusta or that she lacked neutrality when she issued the search warrant. Thus, this argument is unpersuasive.

Second, Defendant contends that "the warrant was so lacking in probable cause . . . that the good faith exception should not apply." Objections at 14. As noted above, the Fourth Amendment violation at issue is not a lack of probable cause but, rather, a lack of a "lawfully vested" magistrate. *Shadwick*, 407 U.S. at 352. Since the court has determined that the search warrant affidavit established probable cause to believe that a firearm and/or ammunition was in Defendant's residence, this argument is also without merit.

Finally, Defendant argues that the warrant was "so facially deficient" that Officer Posusta could not reasonably have relied upon it. Objections at 14. Defendant has presented no evidence that Officer Posusta knew that Judge Mahoney lacked the authority to issue the search warrant or that a reasonable officer would have known that Judge Mahoney lacked such authority. The parties themselves dispute the warrant-issuing authority of Sac & Fox tribal judges and neither party has presented any evidence that the warrant-issuing authority is well-established or clear. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that, in the context of qualified immunity, government officials are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). Therefore, the court finds that Defendant's argument that Officer Posusta could not have reasonably relied on the warrant is unpersuasive. Accordingly, the *Leon* good-faith exception applies in the instant action and the evidence is admissible.

### *3.  Evidence of tribal offenses*

Alternatively, the court finds that the search warrant affidavit established probable cause to believe that evidence relating to Defendant's tribal charges was located in Defendant's residence. In its Resistance, the government argues that the search warrant was issued to search for evidence of tribal offenses:

> At the time of the search[,] defendant was charged in tribal court with the offenses of disorderly conduct, assault and intimidation during which he indicated he was going to retrieve a firearm. The seizure of a firearm or ammunition from defendant's residence would be relevant evidence in that prosecution in Tribal Court.

Resistance at 10. Defendant, however, argues that Officer Posusta sought the warrant "solely for the purpos[e] of finding evidence that James Youngbear was a felon in possession of a firearm," which is not an offense defined under the Tribal Code. Objections at 11.

"[A]n officer's subjective intent is not relevant to a probable cause inquiry." *Stepnes v. Ritschel*, 663 F.3d 952, 962 (8th Cir. 2011). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)) (internal quotation marks omitted). In *Devenpeck*, the Supreme Court applied this principle and rejected a "closely related" rule, which required that "the offense establishing probable cause . . . be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." *Id*.

In this case, Defendant was charged with assault, intimidation and disorderly conduct at the time that Officer Posusta sought the search warrant. Under Section 13-5603 of the Tribal Code, "[a] person commits Assault when the person . . . intentionally threatens unlawful contact upon another, coupled with an apparent ability to carry out that threat, and does some act which creates a well-founded fear in such other person that such contact is

12

imminent." Section 13-51112 of the Tribal Code provides that "[a] person who, directly or indirectly, uses unjustified force or violence or threatens the use thereof . . . with intent to force or coerce any other person to do something against that person's will commits Intimidation." If Officer Posusta found a weapon in Defendant's residence, it "would be circumstantial evidence tending to prove that he in fact threatened" to use violence. *Grooms*, 602 F.3d at 942 (holding that police had probable cause to search the defendant's vehicle for a firearm after the defendant stated during a verbal altercation that he was going to get a gun). Thus, a firearm would be evidence relevant to Defendant's tribal charges. Even if Officer Posusta sought the evidence to prove that Defendant was a felon in possession of a firearm, Officer Posusta's subjective intent is irrelevant. Thus, the court finds that the search warrant sought evidence of tribal offenses, and, therefore, Judge Mahoney had authority to issue the warrant.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 28) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 22) is **ADOPTED IN PART**; and

(3) The Motion (docket no. 15) is **DENIED**.

**DATED** this 20th day of January, 2012.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA